1
2
3
4
5

KARREN KENNEY, CA. SBN 174872
KENNEY LEGAL DEFENSE
2900 BRISTOL STREET, SUITE C204
COSTA MESA, CA 92626
TELEPHONE: (855) 505-5588
E-MAIL: KARREN@KENNEYLEGALDEFENSE.US

Attorney for *Plaintiff Peter McNeff*

6
7
8
9

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA-OAKLAND

10
11
12
13
14
15
16
17
18
19
20
21
22

| | |
|---|---|
| PETER MCNEFF, an individual,<br><br>            Plaintiff,<br><br>        vs.<br><br>THE CITY OF PLEASANTON, a City within the State of California;<br>THE PLEASANTON POLICE DEPARTMENT, a Division of defendant City;<br>DAVID SWING, an individual;<br>LARRY COX, an individual;<br>BRIAN DOLAN, an individual; and DOES 1-10, individuals;<br><br>            Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.:<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF:**<br><br>1. **Violation of Civil Rights – First Amendment**<br>2. **Retaliation for Engaging in Political Activity (Cal. Lab. Code §§ 1101, 1102; Cal. Gov. Code § 3201 *et seq.*)**<br>3. **Wrongful Discharge For Lawful Off-Duty Conduct (Cal. Lab. Code § 96(k))**<br><br>**JURY TRIAL DEMANDED** |

23
24
25

        Plaintiff, PETER MCNEFF, alleges the following on information and

belief:

*McNeff v. City of Pleasanton, et al.*          United States District Court- NDCA
**COMPLAINT**

# PARTIES

1. Plaintiff, PETER MCNEFF (hereinafter "MR. MCNEFF"), is, and at all times mentioned herein was, a competent adult residing in Contra Costa County, California and was, at all relevant times, an employee of defendant Pleasanton Police Department, a division of defendant City of Pleasanton.

2. Defendant, CITY OF PLEASANTON (hereinafter "CITY") is, and at all times mentioned herein was, a government entity, a City within the State of California doing substantial business in Pleasanton, California County of Contra Costa.

3. Defendant, PLEASANTON POLICE DEPARTMENT (hereinafter "DEPARTMENT") is, and at all times mentioned herein was, a Division of Defendant CITY, and a governmental entity, with its principal place of businese located in Pleasanton, California, County of Contra Costa.

4. Defendant, DAVID SWING (hereinafter "MR. SWING" or "the Chief") is, and at all times mentioned herein was, an individual and employee of defendant DEPARTMENT.

5. Defendant, LARRY COX (hereinafter "MR. COX" or "the Captain") is, and at all times mentioned herein was, an individual and employee of defendant DEPARTMENT.

6. Defendant, BRIAN DOLAN (hereinafter "MR. DOLAN") is, and at all times mentioned herein was, an individual and employee of defendant CITY.

7. Plaintiff is informed and believes and thereon alleges that defendants DOES 1 through 10, inclusive, are fictitious names of defendants

whose true names and capacities are at this time unknown to plaintiff. Plaintiff is informed  and believes and thereon alleges that each defendant so designated was the officer, director, shareholder, employer, employee, agent and/or other representative of named defendants, and that each defendant so designated is responsible in whole or in part for the damages suffered by plaintiff.

8.  Plaintiff is informed and believes and thereon alleges that defendants and each of them, were acting as the agent, servant, or employee of each other and were acting within the scope of their respective employment, with the full knowledge and consent, either express or implied, of each of the other named defendants

## JURISDICTION AND VENUE

9.  Jurisdiction of matters claimed herein is properly before the United States District Court, Northern District of California, pursuant to 28 U.S.C.  §§ 1331 and 1343(3).  This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367.

10. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1392(b) because a substantial part of the acts, events, or omissions giving rise to the action occurred in this District and Defendant operates a facility within the District where Plaintiff was employed.

11. Pursuant to United Stated District Court, Northern District of California, Civil Local Rule 3-2(c), Plaintiff is commencing this action in Oakland, California because many of the facts and circumstances of this action arose in Contra Costa County, CA.

*McNeff v. City of Pleasanton, et al.*          United States District Court- NDCA
**COMPLAINT**

## STATEMENT OF FACTS

12. MR. MCNEFF was a 5+ year veteran of the DEPARTMENT.  His position at the time of his termination by the DEPARTMENT was Officer.  Until the events described herein, MR. MCNEFF had an exemplary record and had been recognized for numerous outstanding acts, commendations, and superior performance throughout his career. His positive performance evaluations span several years and describe him as an officer who consistently demonstrates good judgment, a prepared leader, and an officer with exceptional motivation and drive. MR. MCNEFF was even described as an officer who consistently behaves in a manner which supports teamwork to accomplish the department's goals and objectives.

13. On January 6, 2021, MR. MCNEFF attended a political rally, specifically a "Stop the Steal" rally, in Sacramento, California. He did so as a private citizen and during his personal time.  He did not identify himself as a police officer at this political rally.   He wore civilian clothing to the political rally.  MR. MCNEFF posted pictures of himself with his wife, dressed in civilian clothing, at this political rally, on his personal Facebook page.  This Facebook page was used under a pseudonym, "Jonathan P."  There is no evidence that MR. MCNEFF did anything other than attend and observe the political rally.

14. Another Pleasanton Police Officer saw this picture of MR. MCNEFF and his wife on social media and complained to a superior.    This started widespread discussion within the DEPARTMENT, with fellow officers as well as senior ranking, supervisory officers, regarding MR.

*McNeff v. City of Pleasanton, et al.*          United States District Court- NDCA
**COMPLAINT**

MCNEFF's political views.  MR. MCNEFF was referred to as a "moron" and his actions were widely criticized and ridiculed.

15. On January 7, 2021, a Police Sergeant sent a memorandum to MR. SWING documenting internal complaints regarding MR. MCNEFF's political action.  In this memorandum, authored and sent one day following the January 6, 2021 political rally, this Sergeant "concluded" that MR. MCNEFF attended an event organized by a group known for their propensity to discuss extreme violence, incitement of violence, and threats.  MR. MCNEFF was at a protected political rally in Sacramento, California, however in this memorandum, the Sergeant nonetheless concluded that the group that organized the event attended by MR. MCNEFF was the same group responsible for the unprecedented events at the Capitol in Washington, D.C.  This Sergeant went so far as to conclude that MR. MCNEFF directly associated himself with the unlawful activities at the U.S. Capitol.  This Sergeant further concluded that MR. MCNEFF associated with known extremist groups such as the "Proud Boys" and "The Three Percenters" who promote racist and violent political ideologies and carry out violence.  These conclusions were a direct attack on MR. MCNEFF's character and reputation and were unsupported by any real evidence.  Nevertheless, this memorandum was drafted and sent on January 7, 2021, absent any conversation with MR. MCNEFF or any true diligent investigation into MR. MCNEFF's actions simply because MR. MCNEFF exercised his protected right to political speech and expression.

16. To exacerbate the attack on MR. MCNEFF's character and reputation, this January 7, 2021 memorandum contained descriptions of the hate

*McNeff v. City of Pleasanton, et al.*          United States District Court- NDCA
**COMPLAINT**

groups with which the Sergeant wrongfully concluded MR. MCNEFF associated.  The memorandum described the "Proud Boys" as a far right white nationalist organization that promotes and engages in political violence and is described as a general hate group that is overtly Islamophobic and misogynistic. The memorandum further described "The Three Percenters" as a far right paramilitary group that promotes resistance to the federal government that is identified as an "anti-government extremist group" and associated with political violence linked to political violence in other areas of the country, the bombing of an Islamic Center in Bloomington, Indiana, and the recent plot to kidnap the Governor of the State of Michigan.  Finally, the memorandum described "Stop the Steal" as a campaign organized nationally by StopTheSteal.us promoting conspiracy theories regarding election fraud which have been repeatedly discredited.  The Sergeant even claimed that Stop the Steal groups were removed from social media due to their members' propensity to discuss extreme violence, incitement to violence, and threats.  He ended by claiming these Stop the Steal events were frequented by members of the Proud Boys, The Three Percenters, and other radicalized groups.

17. Mr. MCNEFF continued to work at the DEPARTMENT despite the attack on his character and reputation.  He continued to work absent any evidence to corroborate the Sergeant's defamatory and damaging conclusions. Instead, if asked, MR. MCNEFF would and could explain his protected political views that he believed there were errors in the 2020 election that needed a thorough investigation.  MR. MCNEFF never indicated and never would indicate he had any support for or association with any radical or extremist group.

*McNeff v. City of Pleasanton, et al.*          United States District Court- NDCA
**COMPLAINT**

18. Shortly after January 6, 2021, other officers searched through MR. MCNEFF's social media profiles to find anything that supported radical and extremist political views. The DEPARTMENT was aware of these searches and did not stop the rhetoric despite the fact that it was false and uncorroborated.

19. It was not until March 8, 2021, that MR. COX contacted MR. MCNEFF and advised MR. MCNEFF that MR. SWING directed him to conduct a formal internal investigation. This formal investigation commenced two months after the Sergeant drafted and sent his memorandum with uncorroborated and incorrect conclusions. This formal investigation, sparked entirely by MR. MCNEFF's protected political speech, expression, and beliefs, began two months after superiors in the DEPARTMENT expressed their displeasure with MR. MCNEFF's exercise of his protected political expression on his own time, as a private citizen, and did nothing to stop the discussion surrounding the incorrect and uncorroborated conclusion that MR. MCNEFF associated with hate groups or the negative comments made about MR. MCNEFF's character.

20. The DEPARTMENT chose to hire an outside law firm to investigate MR. MCNEFF for joining that political rally where they believe he associated with known hate groups. In total, as a result of their displeasure with MR. MCNEFF's exercise of his protected political speech and expression, the search of MR. MCNEFF's social media profiles by other members of the DEPARTMENT, and the DEPARTMENT's belief that MR. MCNEFF's political views were too far to the right, the DEPARTMENT made five separate allegations against MR. MCNEFF all relating to his current and past political

views.  These allegations were all made as a result of the DEPARTMENT's response to MR. MCNEFF attending that peaceful, lawful political rally on January 6, 2021 and the subsequent search of the entire history of MR. MCNEFF's social media profiles.

21. The Department chose to commence such investigation into MR. MCNEFF's suspected radicalized and/or extremist associations, absent any information that MR. MCNEFF actually associated with or supported any such hate or extremist groups, resulting in lasting and irreversible damage to MR. MCNEFF's character and reputation.  The DEPARTMENT did so after at least one senior office urged them not to touch this issue with a ten-foot pole.

22. Allegation 1.1 was the MR. MCNEFF associated with racist and anti-religious extremist groups when he attended the Stop the Steal rally in Sacramento, California on January 6, 2021 in violation of DEPARTMENT and CITY policies.

23. This outside law firm interviewed a minimum of seven different Pleasanton Police Officers as a result of the DEPARTMENT's allegations.  Each of these officers was presented with information regarding MR. MCNEFF's attendance at the January 6, 2021 rally and then questioned in detailed about whether they had any knowledge of any racist or extremist views held by MR. MCNEFF.  The questioning was clearly skewed to elicit negative information about MR. MCNEFF.  Thus, in engaging in this type of questioning, the interviewer further exacerbated the damage to MR. MCNEFF's character and reputation as a result of MR. MCNEFF's exercise of his protected political views.  These officers were further questioned as to whether this political view was immature or wrong.  The officers

*McNeff v. City of Pleasanton, et al.*          United States District Court- NDCA
**COMPLAINT**

freely spoke of their opinions, mostly negative, of individuals who would attend such a rally.  Nevertheless,  MR. MCNEFF's actions were always associated with a constitutionally protected political expression.

24. MR. MCNEFF was questioned regarding his attendance at this January 6, 2021 rally. He indicated he went to observe the rally, that the rally was peaceful, that he did not see anyone break the law nor did he see any arrests.  He made clear he does not support any radical or extremist group.  He simply believed there was an issue with the 2020 election that needed to be addressed.

25. Ultimately, the outside law firm EXONERATED MR. MCNEFF of this allegation finding that MR. MCNEFF's attendance at this political rally did not violate any DEPARTMENT or CITY policies.  Contrary to the Sergeant's memorandum dated January 7, 2021, this law firm found the evidence did NOT SUPPORT any conclusion that MR. MCNEFF attended this political rally in support of any racist or anti-religious group.  Moreover, contrary to the Sergeant's memorandum of January 7, 2012, the evidnce failed to support that this political rally was predominantly attended by any racist and/or anti-religious group. The law firm found that MR. MCNEFF did not engage in any inappropriate behavior when he attended this protected political rally.

26. Allegation 1.2 was MR. MCNEFF posted racist comments on social media in violation of DEPARTMENT and CITY policies. This was in response to a Facebook post of a Thin Blue Line Flag, a picture or depiction generally associated with those who support law enforcement or "Blue Lives Matter."  At least one member of the DEPARTMENT alleged that, after the George Floyd incident, this

*McNeff v. City of Pleasanton, et al.*          United States District Court- NDCA
**COMPLAINT**

depiction had been coopeted by far-right extremist groups and was offensive to people of color.  This individual claimed the picture was posted in opposition to the "Black Lives Matter" movement that strengthened after the George Floyd incident.

27. The law firm noted that MR. MCNEFF's Facebook page was accessible to the public as it was seen by people outside of the DEPARTMENT.

28. After interviewing the minimum of seven members of the DEPARTMENT, this allegation was NOT SUSTAINED by the law firm.  Namely, the law firm noted that MR. MCNEFF made this Facebook post prior to the George Floyd incident and the post did not relate in opposition to Black Lives Matter or any of the civil unrest related to the George Floyd incident.

29. Allegation 1.3 was MR. MCNEFF posted anti-Muslin comments on social media in violation of DEPARTMENT and CITY policy.  This allegation was in response to two separate Facebook posts on MR. MCNEFF's profile from 2014, prior to his employment with the DEPARTMENT.  The first post was the reposting of a video from IsraelVideoNetwork.com that spoke of the establishment of Israel as a sovereign state in opposition to Palestine.  MR. MCNEFF posted "Can't deny the truth?" as a comment to this video.  The second was the reposting of an article allegedly authored by Bill Cosby that states, among other things, the author is "tired of being told that Islam is a 'Religion of Peace' when every day I read dozens of stories of Muslim men killing their sisters, wives, and daughters for their family honor."  In 2014, MR. MCNEFF posted this article with a comment "What would the world be like with more Bill Cosby's."

*McNeff v. City of Pleasanton, et al.*          United States District Court- NDCA
**COMPLAINT**

30. The law firm was unable to locate and/or view the video regarding Israel posted by MR. MCNEFF on July 13, 2014 as it was no longer accessible on IsraelVideoNetwork.com.

31. The law firm could not conclude whether the article regarding Islam was in fact authored by Bill Cosby.

32. The law firm interviewed the minimum of seven members of the DEPARTMENT regarding these 2014 Facebook posts. These seven individuals were questioned at length about whether they had any knowledge of MR. MCNEFF behaving inappropriately, discriminatingly, or in a racist fashion toward any people of color, especially Muslims.

33. The investigation revealed that no officer had ever observed nor heard of MR. MCNEFF acting inappropriately toward any person based on ethnicity, religion, race, etc.

34. The law firm found that the Israel video "could be" offensive to Palestinian people and that the Bill Cosby article overgeneralized and stereotyped Muslim men and was thus offensive.

35. During the investigation into this allegation, MR. MCNEFF asserted it was religious and political belief that Israel was a sovereign nation. As to the article regarding Islamic extremism, MR. MCNEFF asserted he was opposed to violent Muslim extremism. He did not believe the article stereotyped Muslim men as he believed it only referred to the extremist acts.

36. The law firm SUSTAINED this allegation and noted that these sentiments could be viewed by the public.

37. Allegation 1.4 was that MR. MCNEFF posted derogatory statements on social media about people with mental disabilities in violation of

*McNeff v. City of Pleasanton, et al.*          United States District Court- NDCA
**COMPLAINT**

DEPARTMENT and CITY policies.  This was in response to a comment MR. MCNEFF posted on another Facebook page regarding gun rights.  MR. MCNEFF commented on an article that in essence stated that guns are not the problem, it is people with mental illnesses who use the guns that are the problem. As a comment to the article, MR. MCNEFF asked "Why doesn't the media catch onto this?"

38. Again, the law firm interviewed a minimum of seven members of the DEPARTMENT regarding this Facebook comment.

39. In response to this allegation. MR. MCNEFF stated that he posted the comments in 2014 based on his personal belief that mass shooters are people that suffer with mental illnesses.

40. The law firm again interviewed the minimum of seven members of the DEPARTMENT about this Facebook post.

41. The law firm DID NOT SUSTAIN this allegation, finding that the evidence was insufficient to prove that MR. MCNEFF'S posted Facebook comment was disparaging people with mental illnesses. Notably, none of those interviewed, except for one, had ever seen this post.  The person that did see the post indicated they never made any connection that the post was referring to people with mental illnesses.

42. Allegation 1.5 was that MR. MCNEFF posted comments on social media that threatened violence in violation of DEPARTMENT and CITY policies. This allegation stems from two separate Facebook posts.  The first was regarding the COVID-19 mandates in effect at the time of the post.  MR. MCNEFF in essence commented that people will eventually revolt against these mandates and the response will be violent if necessary.   The second was a comment posted under a

photo of protesters in the street with officers.  Under the photo, MR. MCNEFF commented "Isn't this why cars have bumpers? J/K."

43. Once again, the law firm interviewed a minimum of seven members of the DEPARTMENT about these Facebook posts.

44. The law firm found that the COVID-19 post was likely made in December of 2020, while MR. MCNEFF was employed by the DEPARTMENT and CITY.  The law firm found that the posts were somewhat linked to MR. MCNEFF's employment because his Facebook page indicated he worked at the City of Pleasanton Community Services and also contained a picture of the Pleasanton police badge.  The law firm found that, taken collectively, this implied he was linked to the DEPARTMENT at the time the post was made.

45. As for the photo of the protesters, the law firm found that it was more likely than not that MR. MCNEFF made that post prior to his employment by the DEPARTMENT but that he did not remove it upon commencing his employment with the DEPARTMENT.

46. The law firm SUSTAINED this fifth and final allegation against MR. MCNEFF.

47. The impetus of and major focus of this investigation was MR. MCNEFF's attendance at the "Stop the Steal" rally and an unfounded belief that, because he attended such a rally, MR. MCNEFF associated with racist  and/or extremist groups.  For all intents and purposes, the "Stop The Steal" rally was the result of protected political beliefs surrounding the 2020 presidential election.

48. Throughout the investigation,  a minimum of seven different members of the DEPARTMENT were repeatedly questioned about MR. MCNEFF's alleged racist and extremist associations and tendencies.

*McNeff v. City of Pleasanton, et al.*          United States District Court- NDCA
**COMPLAINT**

The investigation made it clear that the DEPARTMENT labeled MR. MCNEFF as such simply as a result of his attendance at a political rally.

49. MR. MCNEFF was engaged in protected political speech and expression when he attended the January 6, 2021 political rally. Nevertheless, the DEPARTMENT chose to alienate him, question his character, damage his reputation, and commence a lengthy and detailed investigation into MR. MCNEFF's character and ability to perform as an officer.

50. MR. MCNEFF further engaged in protected speech when he made all of the relevant Facebook posts and comments. Namely, MR. MCNEFF engaged in protected political speech when he posted his concerns regarding Muslim extremism, the State of Israel, and the State of California's rigorous COVID-19 guidelines. Nevertheless, the DEPARTMENT and CITY, via MR. NOLAN, served MR. MCNEFF with a notice of termination following a Skelly hearing, terminating his employment effective February 4, 2022.

51. The DEPARTMENT and CITY's stated reasons for termination are pretext. MR. MCNEFF was, in fact, fired because he expressed protected political opinions and ideologies deemed "unpopular" and even stupid by the DEPARTMENT, MR. SWING, and MR. COX.

52. As a direct and proximate result of Defendants' conduct, Plaintiff has incurred both economic and non-economic damages in an amount to be determined at trial, according to proof.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

*McNeff v. City of Pleasanton, et al.*          United States District Court- NDCA
**COMPLAINT**

53. On April 12, 2022, MR. MCNEFF submitted a complaint to the Department of Fair Employment and Housing ("DFEH") pursuant to Cal. Government Code section 12900, *et seq.* indicating he was discriminated against by his employer, THE CITY, as a result of the expression of his personal political and religious beliefs.

54. A true and correct copy of this complaint is attached hereto as **Exhibit A** and is incorporated by reference.

55. On April 12, 2022, DFEH acknowledged the complaint had been served, closed the case and issued a Right to Sue Notice. This Right To Sue Notice is attached as part of **Exhibit A**.

### FIRST CAUSE OF ACTION
### VIOLATION OF CIVIL RIGHTS - FIRST AMENDMENT
### (42 U.S.C. § 1983)
### [Against all Defendants]

56. MR. MCNEFF re-alleges and incorporates by reference all of the paragraphs set forth above.

57. The individually named defendants all acted under the color of law.

58. The acts of the individually named Defendants deprived MR. MCNEFF of his particular rights under the First Amendment of the United States Constitution.

59. MR. SWING and MR. DOLAN had final policymaking authority from the City of Pleasanton concerning these acts.

60. When MR. SWING and MR. DOLAN engaged in the above-described acts, they were acting as final policymakers for Defendant CITY OF PLEASANTON.

*McNeff v. City of Pleasanton, et al.*          United States District Court- NDCA
**COMPLAINT**

61. MR. MCNEFF spoke and acted as a citizen on matters of public concern.  Indeed, these matters are under investigation at the highest levels of government today.

62. MR. MCNEFF suffered numerous adverse employment actions, including, but not limited to, administrative leave and revocation of police officer status, public shaming, disgrace and humiliation, being subjected to investigation, termination of employment, and ineligibility for rehire.

63. MR. MCNEFF's protected speech was a substantial motivating factor in the adverse employment actions, including his termination.

64. MR. MCNEFF was harmed.

65. Defendants' conduct was a substantial factor in causing MR. MCNEFF's harm.

66. By engaging in the above-described acts, the individually named Defendants acted with malice and deliberate indifference to MR. MCNEFF's constitutionally protected rights.  Specifically, they knew that firing MR. MCNEFF for engaging in off-duty political speech protected by the First Amendment was illegal, immoral, and wrong.  In addition, they knew or should have known, and acted with reckless disregard of the fact that engaging in the above-described adverse employment actions would result in substantial harm to MR. MCNEFF, his reputation, his career, his employment, and his employability.  Nevertheless, they acted with cruel and retaliatory motives and deliberate indifference to MR. MCNEFF's rights under the law.  Therefore, MR. MCNEFF seeks exemplary and punitive damages in an amount sufficient to punish them for their conduct, and to set an example for others, in an amount according to proof at trial.

*McNeff v. City of Pleasanton, et al.*          United States District Court- NDCA
**COMPLAINT**

## SECOND CAUSE OF ACTION

## RETALIATION FOR POLITICAL SPEECH AND ACTIVITY

**(Cal. Lab. Code §§ 1101, 1102, Cal. Gov. Code § 3201 *et seq.*)**

**[Against all Defendants]**

67. MR. MCNEFF re-alleges and incorporates by reference all of the paragraphs set forth above.

68. MR. MCNEFF engaged in protected political activity under California Labor Code sections 1101 and 1102 and California Government Code sections 3201 *et seq.* by attending a political rally and expressing his personal political opinions on other issues of public concern.

69. MR. MCNEFF suffered numerous adverse employment actions, including, but not limited to, administrative leave and revocation of police officer status, public shaming, disgrace and humiliation, being subjected to investigation, termination of employment, and ineligibility for rehire.

70. MR. MCNEFF's protected political activity and speech was a substantial motivating factor in the adverse employment actions, including his termination.

71. By subjecting MR. MCNEFF to adverse employment actions because he engaged in protected political activities and speech, Defendants violated California Labor Code sections 1101 and 1102 and California Government Code sections 3201 *et seq.*

72. MR. MCNEFF was harmed.

73. Defendants' conduct was a substantial factor in causing MR. MCNEFF's harm.

*McNeff v. City of Pleasanton, et al.*          United States District Court- NDCA

**COMPLAINT**

## THIRD CAUSE OF ACTION
## TERMINATION FOR LAWFUL, OFF-DUTY CONDUCT
### (Cal. Lab. Code § 96(k))
### [Against all Defendants]

74. MR. MCNEFF re-alleges and incorporates by reference all of the paragraphs set forth above.

75. MR. MCNEFF engaged in lawful, off-duty conduct protected by protected political activity under California Labor Code section 96(k) by attending a political rally and expressing his personal political opinions on other issues of public concern.

76. MR. MCNEFF suffered numerous adverse employment actions, including, but not limited to, administrative leave and revocation of police officer status, public shaming, disgrace and humiliation, being subjected to investigation, termination of employment, and ineligibility for rehire.

77. MR. MCNEFF's lawful off-duty conduct protected was a substantial motivating factor in the adverse employment actions, including his termination.

78. By subjecting MR. MCNEFF to adverse employment actions because he engaged in lawful, off-duty conduct, Defendants violated California Labor Code section 96(k).

79. MR. MCNEFF was harmed.

80. Defendants' conduct was a substantial factor in causing MR. MCNEFF's harm.

### PRAYER

*McNeff v. City of Pleasanton, et al.*                United States District Court- NDCA
**COMPLAINT**

Wherefore, Plaintiff prays for judgment against Defendants as follows:

1. Upon the First Cause of Action, for compensatory, economic, non-economic, consequential, general, special, exemplary and punitive damages according to proof;

2. Upon the Second Cause of Action, for compensatory, economic, non-economic, consequential, general and special damages according to proof;

3. Upon the Third Cause of Action, for compensatory, economic, non-economic, consequential, general and special damages according to proof;

4. On all causes of action, attorneys' fees and costs as provided by 42 U.S.C. § 1988, Labor Code § 2698 *et seq.*, and Code of Civil Procedure § 1021.5;

5. On all causes of action, for declaratory and injunctive relief as may be deemed appropriate; and

6. For such other and further relief, as the Court may deem just and proper.

Respectfully submitted,

DATED: January 10, 2023            _____/s/*Karren Kenney*_____
                                   KARREN KENNEY
                                   *Attorney for Plaintiff*
                                   PETER MCNEFF

*McNeff v. City of Pleasanton, et al.*            United States District Court- NDCA
**COMPLAINT**

# **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial with respect to all issues triable by jury.

Respectfully submitted,

DATED: January 10, 2023       _____/s/ __*Karren Kenney*_____
KARREN KENNEY
*Attorney for Plaintiff*
PETER MCNEFF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT A



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                                                    KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

April 12, 2022

Pete McNeff
████████████
Brentwood, California 94513

RE:     **Notice to Complainant**
        DFEH Matter Number: 202204-16656008
        Right to Sue: McNeff / City of Pleasanton

Dear Pete McNeff:

Attached is a copy of your complaint of discrimination filed with the Department of Fair
Employment and Housing (DFEH) pursuant to the California Fair Employment and
Housing Act, Government Code section 12900 et seq. Also attached is a copy of your
Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, DFEH will not serve these
documents on the employer.** You must serve the complaint separately, to all named
respondents.  If you do not have an attorney, you must serve the complaint yourself.
Please refer to the attached Notice of Case Closure and Right to Sue for information
regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of
Discrimination Complaint" is attached for your convenience.

Be advised that the DFEH does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,


Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                         GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                    KEVIN KISH, DIRECTOR
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

April 12, 2022

RE:   **Notice of Filing of Discrimination Complaint**
      DFEH Matter Number: 202204-16656008
      Right to Sue: McNeff / City of Pleasanton

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the
Department of Fair Employment and Housing (DFEH) in accordance with Government
Code section 12960. This constitutes service of the complaint pursuant to Government
Code section 12962. The complainant has requested an authorization to file a lawsuit. A
copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

This matter may qualify for DFEH's Small Employer Family Leave Mediation
Pilot Program. Under this program, established under Government Code
section 12945.21, a small employer with 5 -19 employees, charged with violation
of the California Family Rights Act, Government Code section 12945.2, has the
right to participate in DFEH's free mediation program. Under this program both
the employee requesting an immediate right to sue and the employer charged
with the violation may request that all parties participate in DFEH's free
mediation program. The employee is required to contact the Department's
Dispute Resolution Division prior to filing a civil action and must also indicate
whether they are requesting mediation.  The employee is prohibited from filing a
civil action unless the Department does not initiate mediation within the time
period specified in section 12945.21, subdivision (b) (4), or until the mediation is
complete or is unsuccessful. The employee's statute of limitations to file a civil
action, including for all related claims not arising under section 12945.2, is tolled
from the date the employee contacts the Department regarding the intent to
pursue legal action until the mediation is complete or is unsuccessful. You may
contact DFEH's Small Employer Family Leave Mediation Pilot Program by
emailing DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter
number indicated on the Right to Sue notice.


Please refer to the attached complaint for a list of all respondent(s) and their contact
information.

No response to DFEH is requested or required.

Sincerely,

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                    GAVIN NEWSOM, GOVERNOR

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                                 KEVIN KISH, DIRECTOR
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

April 12, 2022

Pete McNeff
███████████████
Brentwood, California 94513

RE:     **Notice of Case Closure and Right to Sue**
        DFEH Matter Number: 202204-16656008
        Right to Sue: McNeff / City of Pleasanton

Dear Pete McNeff:

This letter informs you that the above-referenced complaint filed with the Department of
Fair Employment and Housing (DFEH) has been closed effective April 12, 2022
because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. The civil action must be
filed within one year from the date of this letter.

This matter may qualify for DFEH's Small Employer Family Leave Mediation
Pilot Program. Under this program, established under Government Code section
12945.21, a small employer with 5 -19 employees, charged with violation of the
California Family Rights Act, Government Code section 12945.2, has the right to
participate in DFEH's free mediation program. Under this program both the
employee requesting an immediate right to sue and the employer charged with
the violation may request that all parties participate in DFEH's free mediation
program. The employee is required to contact the Department's Dispute
Resolution Division prior to filing a civil action and must also indicate whether
they are requesting mediation. The employee is prohibited from filing a civil
action unless the Department does not initiate mediation within the time period
specified in section 12945.21, subdivision (b) (4), or until the mediation is
complete or is unsuccessful. The employee's statute of limitations to file a civil
action, including for all related claims not arising under section 12945.2, is tolled
from the date the employee contacts the Department regarding the intent to
pursue legal action until the mediation is complete or is unsuccessful. Contact
DFEH's Small Employer Family Leave Mediation Pilot Program by emailing
DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number
indicated on the Right to Sue notice.

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                               KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment
Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this
DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act,
whichever is earlier.

Sincerely,


Department of Fair Employment and Housing

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**
**BEFORE THE STATE OF CALIFORNIA**
**DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Pete McNeff                                                                 DFEH No. 202204-16656008

Complainant,

vs.

City of Pleasanton
4833 Bernal Ave.
Pleasanton, CA 94513

Respondents

_____

**1.** Respondent **City of Pleasanton** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2.** Complainant **Pete McNeff**, resides in the City of **Brentwood,** State of **California.**

**3.** Complainant alleges that on or about **February 4, 2022**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's religious creed - includes dress and grooming practices, medical condition (cancer or genetic characteristic).

**Complainant was discriminated against** because of complainant's religious creed - includes dress and grooming practices and as a result of the discrimination was terminated.

**Additional Complaint Details:** I was terminated from my job on 02/04/2022 after my employer determined my expression of my personal religious and political sentiments were a violation of policy. The personal statements included elements of my faith that I believe were used as the basis for the termination of my employment.

-1-
*Complaint – DFEH No. 202204-16656008*

Date Filed: April 12, 2022

Form DFEH-ENF 80 RS (Revised 02/22)

VERIFICATION

I, **Peter McNeff**, am the **Complainant** in the above-entitled complaint.  I have read the foregoing complaint and know the contents thereof.  The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

On April 12, 2022, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Brentwood, California**

-2-

*Complaint – DFEH No. 202204-16656008*

Date Filed: April 12, 2022

Form DFEH-ENF 80 RS (Revised 02/22)