Scott J. Street (SBN 258962)
JW HOWARD/ATTORNEYS, LTD.
201 South Lake Avenue, Suite 303
Pasadena, CA 91101
Tel.: (213) 205-2800
Email: sstreet@jwhowardattorneys.com

John W. Howard (SBN 80200)
JW HOWARD/ATTORNEYS, LTD.
600 West Broadway, Suite 1400
San Diego, CA 92101
Tel.: (619) 234-2842
Email: johnh@jwhowardattorneys.com

Attorneys for Plaintiff
PETER MCNEFF

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER MCNEFF, | Case No. 23-cv-00106-AMO |
| Plaintiff, | Assigned to Hon. Araceli Martinez-Olguin |
| vs. | |
| THE CITY OF PLEASANTON, et al., | **OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| Defendants. | |
| | Date:  March 7, 2024<br>Time:  2:00 p.m.<br>Crtrm. 10 |
| | Action Filed:      January 10, 2023 |

///

///

TABLE OF CONTENTS

I.    INTRODUCTION …………………………………………..……….……….6

II.   FACTS ALLEGED IN THE 2AC …………………………….……...7

III.  LEGAL STANDARD …………………………………………...11

IV.  ARGUMENT ……………………………………………….…12

    A. The 2AC Alleges Facts Sufficient to State a First Amendment
       Retaliation Claim Against Captain Cox………………………….……12

    B. The 2AC Alleges that the City Manager Delegated His Final
       Policymaking Authority Over Police Personnel Matters to Chief
       Swing and Ratified Chief Swing's Unconstitutional Actions……...…16

    C. The 2AC Does Not Show, On Its Face and as a Matter of
       Law, that Cox and Swing Are Entitled to Qualified Immunity……..18

V.   CONCLUSION………………………………………………21

TABLE OF AUTHORITIES

<u>Cases</u>                                                                                          Pg

*Antuna v. Cnty. of Los Angeles*,

    No. CV-14-5600-MWF (PLA), 2015 WL 13905988,

    (C.D. Cal. Sept. 30, 2015)…………………………………………………..19

*Ariz. Students' Ass'n v. Ariz. Bd. of Regents*,

    824 F.3d 858 (9th Cir. 2016) …………………………………………………12

*Ashcroft v. Iqbal*,

    556 U.S. 662 (2009) …………………………………………………………..11

*Barone v. City of Springfield, Or.*,

    902 F.3d 1091 (9th Cir. 2018) ………………………………………….…..16

*Bell Atl. Corp. v. Twombly*,

    550 U.S. 544 (2007) …………………………………………………………..11

*Boquist v. Courtney*,

    32 F.4th 764 (9th Cir. 2022) …………………………………………….…....13

*Cervantes v. Zimmerman*,

    No. 17-CV-1230-BAS-NLS, 2019 WL 3413508 (S.D. Cal. July 29,

    2019)……………………………………………………………………17-18

*Collins v. Jordan*,

    110 F.3d 1363 (9th Cir. 1996) ………………………………………….……...13

*Coszalter v. City of Salem*,

    320 F.3d 968 (9th Cir. 2003) …………………………………….....12-14, 18

*Gilbrook v. City of Westminster*,

    177 F.3d 839 (9th Cir. 1999) ……………………………………………14-15

*Goleta Union Elementary Sch. Dist. v. Ordway*,

    166 F. Supp. 2d 1287 (C.D. Cal. 2001). ……………………………………20

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS 2AC          CASE NO. 23-CV-00106-AMO

*Groten v. Cal.*,

    251 F.3d 844 (9th Cir. 2001).…………………………………………………18

*Knievel v. ESPN*,

    393 F.3d 1068 (9th Cir. 2005) ……….…………………………………………11

*Koala v. Khosla*,

    931 F.3d 887 (9th Cir. 2019) ……………………………………………………12

*Krainski v. Nevada ex rel. Bd. Of Regents of Nev. Sys. Of Higher Educ.*,

    616 F.3d 963 (9th Cir. 2010) ……………………………………………………18

*Lakeside-Scott v. Multnomah Cnty.*,

    556 F.3d 797 (9th Cir. 2009) …………………………………………...14, 15

*Leer v. Murphy*,

    844 F.2d 628 (9th Cir. 1988) …………………………………….………16

*Martinez v. City of Imperial*,

    No. 15CV0440 JM(PCL), 2016 WL 245514 (S.D. Cal. Jan. 21, 2016)……4, 17

*Mendiondo v. Centinela Hosp. Med. Ctr.*,

    521 F.3d 1097 (9th Cir. 2008) …………………………………………….……11

*Miller v. City of Los Angeles*,

    No. CV 13-5148-GW (CWx), 2014 WL 12610195 (C.D. Cal. Aug. 7,

    2014)………………………………………………………...13, 14

*Monell v. Dep't of Soc. Servs. of N.Y.*,

    436 U.S. 658 (1978). …………………………………………7, 12, 16-18

*Moran v. Wash.*,

    147 F.3d 839 (9th Cir. 1998) …………………….………………………19

*O'Brien v. Welty*,

    818 F.3d 920 (9th Cir. 2016) …………………………………………….……18

*Perez v. City of Petaluma*,

    No. 21-CV-06190-JST, 2021 WL 3934662 (N.D. Cal. Aug. 31, 2021)……....13

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

*Pickering v. Bd. of Educ.*,

    391 U.S. 563 (1968) ……….…………………………………....…13, 19-20

*Poland v. Chertoff*,

    494 F.3d 1174 (9th Cir. 2007) …………………………………..……...15

*Riel v. City of Santa Monica,*

    No. CV1404692BROJEMX, 2014 WL 12694159 (C.D. Cal. Sept. 22,

    2014)………………………………………………………………………...19

*Save CCSF Coal. v. Lim*,

    No. 14-cv-05286-SI, 2015 WL 3409260 (N.D. Cal. May 27, 2015)………....17

*Villegas v. Gilroy Garlic Festival Ass'n*,

    541 F.3d 950 (9th Cir. 2008) …………………………………………….16

*Watison v. Carter*,

    668 F.3d 1108 (9th Cir. 2012) ……………………………………….…12, 13

*Wolfe v. Jarnigan*,

    No. 2:08-CV-10, 2008 WL 11453653 (E.D. Tenn. Sept. 2, 2008)……...……19

Statutes

FRCP 12(b)(6) …………………………………………...…………….11, 18

42 U.S.C § 1983……………………………………………...…13, 14, 16

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS 2AC          CASE NO. 23-CV-00106-AMO

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

Plaintiff Peter McNeff opposes the motion to dismiss his Second Amended Complaint ("2AC"), which was filed by Defendants City of Pleasanton, David Swing and Larry Cox.

## I.    **INTRODUCTION**

This should be an easy motion to decide. Officer McNeff has narrowed the case to a single theory: that police Chief Swing and police Captain Cox, two leaders of the Pleasanton Police Department ("PPD"), violated his First Amendment rights by launching an investigation of McNeff's private social media account after he attended a political rally they did not like and then by firing him over two comments he made online, as a private citizen, about matters of public concern that had zero impact on McNeff's job and which nobody within the PPD even knew about until a law firm discovered them during the retaliatory investigation.

Federal courts are filled with such cases. They are rarely decided at the pleading stage because they require factual development and a decision on the merits. Defendants' motion shows no reason to deviate from that practice. It does not follow the rules for pleading motions. For example, it does not accept the 2AC's allegations as true. It does not liberally construe the allegations and ask whether the defendants have received fair notice of the claims alleged against them so they can prepare a defense. To the contrary, the motion contradicts the 2AC's allegations. It cherry-picks allegations to feign ignorance about what McNeff complains about. That is not proper.

That is especially true with Defendants' qualified immunity argument. Defendants made the same argument before. At the last hearing, the Court urged Defendants to put more effort into that argument or to withdraw it. They did not do so. They made practically the same argument they made before. It ignores the complaint's allegations that Chief Swing and Captain Cox *knew* that McNeff had engaged in protected political activity, *knew* that they could not fire McNeff for that activity, and *knew* that any policies McNeff might have broken with his private comments on social

media had no impact on his job performance—indeed, nobody at the City or in the public even knew about them—but they decided to fire him anyway because they did not like his political views. Numerous cases have held that such actions are unconstitutional and numerous cases have held that the legal principle prohibiting such actions is clearly established.

Finally, the 2AC adequately alleges a *Monell* claim against the City under *Monell's* delegation and ratification doctrines. The City did not show otherwise. It did not even discuss McNeff's allegation that the City Manager delegated his final policymaking authority over McNeff's discipline to Chief Swing. And while it disputes other allegations, those are factual arguments that cannot be made at this stage.

That flaw infects the entire motion. And it raises a question: why is the City so eager to get out of this case? It already lost an arbitration with McNeff. It had to reinstate him and pay McNeff his back pay (though it still has not returned him to active duty). Whatever the reason, McNeff has alleged facts sufficient to state a First Amendment retaliation claim against both the individual defendants and the City. The case should proceed.

## II.   FACTS ALLEGED IN THE 2AC

Mr. McNeff is a police officer, an employee of the City of Pleasanton who has worked for the PPD since December 2015. Second Amended Compl. ("2AC"), ¶ 9. He still works for the PPD—despite the City's efforts to fire him for engaging in politically protected activity, and speech, while off duty.

The first activity that McNeff engaged in was a political rally in Sacramento that occurred on January 6, 2021. *Id.* ¶ 10. McNeff attended the rally as a private citizen, during his personal time. *Id.* He did not identify himself as a police officer or a City employee. *Id.* He wore civilian clothing. *Id.* He posted pictures of himself and his wife, who also attended the rally, to his personal Facebook page (a page that uses the

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

pseudonym "Jonathan Pete"). *Id.*

McNeff did not engage in any illegal activity at the Sacramento rally. *Id.* ¶ 11. Along with many others, he engaged in peaceful (and lawful) political activity that day. *Id.*

Following the Sacramento rally, McNeff, a conservative, became a target of the PPD leadership. *Id.* ¶ 12. One officer, a sergeant named Shuffield, wrote a memo to Police Chief Swing that accused McNeff of being a member of the "Proud Boys" political group that was accused of organizing the riot that took place in Washington, DC, on January 6. *Id.*

Sergeant Shuffield sent this memo to Chief Swing without speaking to McNeff and without doing any investigation to verify the accusations he was making. *Id.* ¶ 13. Indeed, the accusations were totally unfounded and were made by the sergeant to retaliate against McNeff for taking a political position that Shuffield did not agree with, to destroy McNeff's reputation and character, and, ultimately, to destroy his career. *Id.*

Chief Swing knew, or reasonably should have known, that the accusations against McNeff were unfounded. *Id.* ¶ 14. Chief Swing also knew that, when he attended the Sacramento rally, McNeff was not on duty. *Id.* He was engaging in protected political activity, as all Americans (including public employees) have a right to do. *Id.*

Thus, McNeff was initially told that the PPD would *not* take any action based on Sergeant Shuffield's memo. *Id.* ¶ 15.

An officer named "Batt," who supported Sergent Shuffield's memo and who wanted to see McNeff punished for his conservative political views, was furious. *Id.* ¶ 16. Thus, on January 10, 2021, he sent an email to the City complaining about McNeff's attendance at the Sacramento rally. *Id.* He falsely signed the email as an "anonymous concerned citizen." *Id.*

1    Chief Swing knew, or reasonably should have known, that the allegedly

2    "anonymous" email complaint came from a disgruntled officer within the PPD, not a

3    citizen. *Id.* ¶ 17. Nonetheless, in a total abdication of his duties, and to punish McNeff

4    for his conservative political views and protected political activity, Chief Swing

5    immediately relieved McNeff of his duties and placed him on leave. *Id.*

6    The PPD did not tell McNeff about the nature of its investigation for two

7    months. *Id.* It spent that time pouring over his social media accounts to find something

8    to use to fire him. *Id.*

9    In March 2021, the PPD launched a formal investigation of Mr. McNeff's

10   political beliefs. *Id.* ¶ 18. The investigation was instituted by Chief Swing, and led by

11   Captain Cox, as part of the PPD's "Patriot Purge," a concerted effort by the liberal

12   PPD leadership (including Chief Swing) to rid the police department of officers who

13   hold conservative political views. *Id.*

14   The 2AC alleges that this investigation was retaliatory. *Id.* ¶ 19. It was sparked

15   entirely by McNeff's participation in protected political activity, by McNeff holding

16   conservative political beliefs that the PPD leadership disagreed with. *Id.* The 2AC also

17   alleges that Chief Swing launched the investigation in bad faith, despite

18   acknowledging that McNeff had engaged in protected (and lawful) First Amendment

19   activity on January 6. *Id.*

20   Chief Swing knew that the investigation was improper. *Id.* ¶ 20. So did Captain

21   Cox, the officer that Chief Swing delegated the investigation to (and another of the

22   liberal PPD leaders who was carrying out the Patriot Purge). *Id.* The 2AC alleges that

23   both Swing and Cox knew they could not punish McNeff for participating in a

24   political rally while off duty, even if they disagreed with his views. *Id.* That principle

25   is clearly established by numerous judicial decisions.

26   Therefore, Chief Swing and Captain Cox designed the investigation to go back

27   through years of McNeff's social media posts, including posts that predated his

28

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS 2AC          CASE NO. 23-CV-00106-AMO

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

employment with the City. *Id.* Their reasoning was simple: although they could not discipline or fire McNeff for attending the January 6 Sacramento rally, they might be able to find some off-color social media posts to use against him. *Id.*

To disguise their animus, Chief Swing and Captain Cox hired a law firm to handle the investigation. *Id.* ¶ 21. It largely exonerated McNeff, concluding that he did not violate any City or PPD policies by attending the January 6 Sacramento rally. *Id.* ¶ 22. It also rejected the PPD's argument that McNeff had made racist comments on social media that prevented him from faithfully serving the community. *Id.* In fact, of the five accusations the PPD made against McNeff, the law firm sustained only two of them, one of which predated McNeff's employment with the City. *Id.*

Given that the law firm largely exonerated McNeff, including against the charge that supposedly sparked the investigation (the January 6 rally), McNeff expected to return to work. *Id.* ¶ 23. Instead, the City terminated his employment. *Id.* That decision was made by Chief Swing acting pursuant to authority delegated to him by the City Manager. *Id.* The City Manager also knew about and ratified the decision, lending the City's entire support to the PPD's effort to fire McNeff for his political beliefs. *Id.* Captain Cox signed the termination order.

Not content to simply fire McNeff, the City and its PPD leaders (including Swing and Cox) also disparaged McNeff during the termination process. *Id.* ¶ 24. They prevented him from obtaining employment at another agency and accused him of being a racist. *Id.*

McNeff challenged his termination through arbitration. *Id.* ¶ 25. He won. The arbitrator ordered that McNeff be reinstated and paid his full back pay, plus 10 percent interest. *Id.*

The arbitrator sharply criticized Chief Swing and Captain Cox in the decision, finding that "not only did Captain Cox and Chief Swing testify that they had no evidence anyone from the public was aware of these posts," which the City tried to

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

fire him over, "but Captain Cox testified that no one who was interviewed during the investigation said they had ever seen McNeff act inappropriately toward Muslims or other minorities." Indeed, the arbitrator noted that the PPD "had never received a single complaint of discrimination by McNeff." *Id.* ¶ 27.

The arbitrator issued that decision last fall, while this case was pending. Since then, McNeff has endured a hostile work environment that seems designed to force him out of the PPD. *Id.* ¶ 30. Indeed, although the arbitrator ordered that the City put McNeff back to work last fall, McNeff still has not returned to active duty. *Id.* Having made such an aggressive effort to fire him, but failed, the City seems unsure what to do with McNeff. *Id.*

After hiring new counsel, McNeff received leave to file the 2AC. Defendants now move to dismiss it under Rule 12(b)(6).

### III.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

This is a low standard. "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). The Court does not weigh the evidence but must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). The goal is to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, a district court weighing a motion to dismiss asks "not whether a plaintiff will

1  ultimately prevail but whether the claimant is entitled to offer evidence to support the
2  claims." *Id.* at 563.

3      This is especially important in civil rights cases. Indeed, in a First Amendment
4  retaliation case like this one, "[d]ismissal is proper only if it is clear that the plaintiff
5  cannot prove any set of facts in support of the claim that would entitle him to relief."
6  *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).

7  **IV.   ARGUMENT**

8      The motion should be denied because, accepted as true and liberally construed
9  in McNeff's favor, the 2AC states a claim that is plausible on its face and which is not
10 barred, on the face of the pleadings, by the qualified immunity doctrine.

11 **A. The 2AC Alleges Facts Sufficient to State a First Amendment**
12 **    Retaliation Claim Against Captain Cox.**

13     The 2AC contains two claims: a First Amendment retaliation claim against
14 Chief Swing and Captain Cox (the first) and a claim to hold the City liable for the
15 individual defendants' actions under *Monell* (the second). Defendants only moved to
16 dismiss the first for failure to state a claim against Captain Cox.

17     "In order to state a claim against a government employer for violation of the
18 First Amendment, an employee must show (1) that he or she engaged in protected
19 speech; (2) that the employer took adverse employment action; and (3) that his or her
20 speech was a substantial or motivating factor for the adverse employment action."
21 *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003) (quotations omitted).
22 Although never a high standard, the First Amendment retaliation doctrine has an even
23 lower bar at this stage. "At the pleading stage, a plaintiff adequately asserts First
24 Amendment retaliation if the complaint alleges plausible circumstances connecting
25 the defendant's retaliatory intent to the suppressive conduct." *Ariz. Students' Ass'n v.*
26 *Ariz. Bd. of Regents*, 824 F.3d 858, 870 (9th Cir. 2016); *see also Koala v. Khosla*, 931
27 F.3d 887, 905 (9th Cir. 2019) (same). The Ninth Circuit has repeatedly reversed trial

28

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

12

court decisions that did not follow these liberal rules. *See, e.g., Boquist v. Courtney*, 32 F.4th 764, 784 (9th Cir. 2022) (reversing dismissal of First Amendment retaliation claim that did "not contain mere legal conclusions" but "specific facts regarding" alleged retaliation); *Watison*, 668 F.3d at 1115-16 (reversing dismissal of three such claims).

Of course, special rules govern the First Amendment retaliation analysis when the government acts not in its sovereign capacity but as an employer. For example, an employee's speech is only protected "if it addresses 'a matter of legitimate public concern.'" *Coszalter*, 320 F.3d at 973 (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 571 (1968)). Defendants did not challenge that element. Nor could they. There is no dispute that Office McNeff's attendance at the Sacramento rally, which occurred off-duty, was constitutionally protected activity. *See, e.g., Collins v. Jordan*, 110 F.3d 1363, 1371 (9th Cir. 1996) ("Activities such as demonstrations, protest marches, and picketing are clearly protected by the First Amendment."). The comments McNeff made about matters of public concern on his private Facebook page are also protected. *See, e.g., Perez v. City of Petaluma*, No. 21-CV-06190-JST, 2021 WL 3964662, at *3 (N.D. Cal. Aug. 31, 2021) (finding online speech to be protected because plaintiff spoke as "private citizen rather than a public employee in his social media posts").

In fact, Defendants did not even move to dismiss this claim with respect to Chief Swing. They just cherry-picked a few allegations about Captain Cox from the 2AC and argued, in conclusory fashion, that the 2AC did "not allege what actions Captain Cox took that will allow this Court to draw the inference that he violated Plaintiff's civil rights." ECF 48 at 12. They are wrong.

"A defendant can be liable under § 1983 only if he caused or was personally involved in the alleged constitutional deprivation." *Miller v. City of Los Angeles*, No. CV 13-5148-GW (CWx), 2014 WL 12610195, at *4 (C.D. Cal. Aug. 7, 2014). True, tough questions can arise "when multiple officials or public bodies play some role" in

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

the underlying retaliation. *Miller*, 2014 WL 12610195, at *5. "Indeed, the Ninth Circuit has developed a whole body of law addressing when, in a multiple-official or subordinate/supervisor scenario, improper motives or adverse actions can be imputed 'upstream' or 'downstream' to impose personal liability under § 1983." *Id.* (citing *Lakeside-Scott v. Multnomah Cnty.*, 556 F.3d 797, 804 (9th Cir. 2009)). For example, "the requisite causal connection can be established not only by some kind of direct personal participation in the [plaintiff's termination], but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Gilbrook v. City of Westminster*, 177 F.3d 839, 854 (9th Cir. 1999) (quotations omitted).

Captain Cox's actions satisfy both rules. *First*, the 2AC alleges that Captain Cox oversaw the investigation of McNeff's social media accounts in March 2021 and that Cox designed the investigation to go through years of McNeff's posts to conceal the fact that Chief Swing was really firing McNeff in retaliation for his conservative political views, including his private social media posts and his attendance at the January 6 Sacramento rally. 2AC ¶ 20. He also signed McNeff's termination order and supported the City's efforts to fire McNeff. That is the type of personal participation that is actionable in a First Amendment retaliation case. That is why the arbitrator singled both Cox and Swing out for criticism in the arbitration decision. 2AC ¶¶ 26-27, Exh. A.

Moreover, the retaliatory investigation itself constitutes an adverse action that can serve as the basis for liability here. *See Coszalter*, 320 F.3d at 976 (listing "unwarranted disciplinary investigation" as something that can qualify as adverse employment action for this claim, especially when coupled with other facts). There is no dispute that Cox participated in that investigation.

*Second*, through the retaliatory social media investigation, Captain Cox set in motion a series of events that he knew, or reasonably should have known, would lead

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

to McNeff's termination. Indeed, the 2AC specifically alleges that Cox and Swing were both looking for something to use to justify firing McNeff, and they believed they would find it among years of social media posts, especially posts that McNeff made before he worked for the City. 2AC ¶¶ 19-20.

Of course, this "setting in motion" principle, "as applied within the context of the employment setting, cannot be taken so literally as to convert into a constitutional tort a subordinate supervisor's mere participation in, while performing her normal supervisory responsibilities, the initiation of a disciplinary process that results in an employee's otherwise appropriate and lawful termination." *Lakeside-Scott*, 56 F.3d at 805. But that is not what happened here. This case more closely resembles *Poland v. Chertoff*, 494 F.3d 1174, 1183 (9th Cir. 2007), where the Ninth Circuit found it appropriate to hold a biased subordinate liable because he "had a pervasive influence on the administrative inquiry that led to the adverse employment action." Similarly, in in *Gilbrook*, 177 F.3d 850-51, one biased subordinate was the "driving force" behind the investigation of the terminated employees while the second biased subordinate held hearings and affirmed that recommendation before it went to the final decision maker. Critically the court "held that a third and final decision maker with the power to ratify, reject or modify the termination decisions did not cut off the liability of the biased subordinates because there was evidence that the employees would not have been disciplined but for the subordinates' actions in bringing the charges in the first place." *Lakeside-Scott*, 56 F.3d at 807.

*Gilbrook* is precisely on point. Defendants cannot show otherwise. Their argument on this issue consumed just one paragraph. They did not cite any cases. They ignored the biased subordinate rule. Moreover, even if they had discussed that rule, both *Gilbrook* and *Lakeside-Scott* were decided after jury trials, not on the pleadings. There is a good reason for that. First Amendment retaliation cases usually require factual development and a decision on the merits. The 2AC gives Captain Cox

fair notice that he is being sued for his personal participation in the retaliatory investigation that led to the termination of McNeff's employment. Rule 8 requires nothing more.

### B. The 2AC Alleges that the City Manager Delegated His Final Policymaking Authority Over Police Personnel Matters to Chief Swing and Ratified Chief Swing's Unconstitutional Actions.

There is also no merit to the Defendants' argument that the 2AC fails to state a claim for municipal liability against the City under *Monell*.

A municipality like the City cannot be held liable under section 1983 "*solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under Section 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978). But a plaintiff can hold a municipality liable "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 964 (9th Cir. 2008) (en banc) (quotations omitted).

The 2AC acknowledges that the Pleasanton City Manager has the authority to hire and fire employees and thus qualifies as an official with final policymaking authority. 2AC ¶ 43. Defendants did not dispute that. Indeed, they appeared to concede it. The 2AC also alleges that the City Manager *delegated* that final policymaking authority for Officer McNeff to the Chief of Police. 2AC ¶ 42. Defendants may dispute that allegation, but they did not explain why. "Issues raised in a brief which are not supported by argument are deemed abandoned." *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).

Even if they had argued the point, it would not have mattered, as courts have found the scope of such delegation to be a factual matter that cannot be resolved as a matter of law, whether on summary judgment or at the pleading stage. *See Barone v. City of Springfield, Or.*, 902 F.3d 1091, 1107 (9th Cir. 2018) (finding "triable issue of

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

16

material fact whether the City Manager delegated his final policymaking authority over employee discipline in the Department to Chief Doney" to support *Monell* claim); *Martinez v. City of Imperial*, No. 15CV0440 JM(PCL), 2016 WL 245514, at *4 (S.D. Cal. Jan. 21, 2016) (denying motion to dismiss because "allegations that the City delegated ultimate authority over police personnel decisions to the city manager and the chief of police are sufficient to establish that such policy is the official policy of the City"). Thus, the 2AC's allegation that the Pleasanton City Manager delegated his authority to fire police officers like McNeff to the Police Chief states a claim under *Monell's* delegation prong.

It also states a claim under *Monell's* ratification prong. "At the pleading stage, a *Monell* claim against a municipality must consist of more than mere formulaic recitations of the existence of unlawful policies, conduct, or habits." *Cervantes v. Zimmerman*, No. 17-CV-1230-BAS-NLS, 2019 WL 3413508, at *7 (S.D. Cal. July 29, 2019) (quotations omitted). That just means that the plaintiff's "factual allegations must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Save CCSF Coal. v. Lim*, No. 14-cv-05286-SI, 2015 WL 3409260, at *12 (N.D. Cal. May 27, 2015) (quotations omitted).

The 2AC clears that low hurdle. It alleges that the City Manager knew about the actions Chief Swing and Captain Cox took against McNeff, and the basis for those actions. 2AC ¶¶ 42-43. It alleges that the City Manager made a conscious choice to ratify the actions and to proceed with McNeff's termination. *Id*. Indeed, the 2AC alleges that the City Manager, plus other city leaders, shared the animus that Chief Swing and Captain Cox showed toward McNeff because of his protected political activity and "put[ ] the entire weight of the City government behind the retaliatory investigation and termination proceeding, even after it became clear that the investigation and termination proceeding were being pursued in bad faith, to punish

McNeff for holding conservative beliefs and to force him and other conservatives out of the PPD." *Id.* ¶ 43. The City may disagree with those allegations but they must be accepted as true at this stage. Liberally construed, they state a claim under *Monell's* ratification prong. *See Cervantes*, 2019 WL 3413508, at *8 (finding similar allegations to state a ratification based *Monell* claim, even though they were "sparse").

More importantly, it is not unfair to keep the City in this case as a defendant. Two high-ranking city officials are already named as defendants. The City is paying their legal fees. As a practical matter, the City will be involved in the case. Thus, this claim should also proceed.

### C. The 2AC Does Not Show, On Its Face and as a Matter of Law, that Cox and Swing Are Entitled to Qualified Immunity.

Finally, the Court should decline the individual defendants' request to dismiss this case based on qualified immunity.

"Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case." *Krainski v. Nevada ex rel. Bd. Of Regents of Nev. Sys. Of Higher Educ.*, 616 F.3d 963, 970 (9th Cir. 2010) (cleaned up). It "is an affirmative defense that must be raised by a defendant." *Groten v. Cal.*, 251 F.3d 844, 851 (9th Cir. 2001). "Thus, a Rule 12(b)(6) dismissal is not appropriate unless [a court] can determine, based on the complaint itself, that qualified immunity applies." *Id.*

That principle precludes dismissal here. *First*, McNeff is accusing Chief Swing and Captain Cox of retaliating against him for engaging in political activity and for speaking, as a private citizen, on matters of public concern. "Retaliation for engaging in protected speech has long been prohibited by the First Amendment." *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016); *see also Coszalter*, 320 F.3d at 979 (noting

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

that, as of 2004, "both the constitutional protection of employee speech and a First Amendment cause of action for retaliation against protected speech were clearly established"). Reflecting that rule, as of 2015, if not earlier, courts in the Ninth Circuit were rejecting qualified immunity defenses like the one Chief Swing and Captain Cox tried to raise here "because it was clearly established law at the time these actions allegedly took place that public officials could not investigate, transfer, or relieve an employee from work because of the employee's exercise of First Amendment rights." *Antuna v. Cnty. of Los Angeles*, No. CV-14-5600-MWF (PLA), 2015 WL 13905988, at *17 (C.D. Cal. Sept. 30, 2015); *see also Riel v. City of Santa Monica,* No. CV1404692BROJEMX, 2014 WL 12694159, at *11–12 (C.D. Cal. Sept. 22, 2014) (rejecting qualified immunity defense asserted by employer for similar reason).

That is especially true with respect to the *termination* of a person's employment. "A termination of employment in retaliation for the employee's exercise of political association is a violation of the First Amendment, and that law is clearly established." *Wolfe v. Jarnigan*, No. 2:08-CV-10, 2008 WL 11453653, at *3 (E.D. Tenn. Sept. 2, 2008).

True, the *Pickering* analysis is a factual one, and some courts have found that to weigh in favor of a qualified immunity defense. But they have done so only in extreme cases, where the *Pickering* analysis tilted heavily in the employer's favor. *See Moran v. Wash.*, 147 F.3d 839, 850 (9th Cir. 1998) (explaining why). That is not the case here. In fact, the 2AC specifically alleges that Chief Swing and Captain Cox *knew* that they could not fire McNeff in response to his off-duty political activity and social media comments, but they disregarded that knowledge. They launched a retaliatory investigation of his private social media account to find an excuse to fire him because they did not like his conservative political views. 2AC, ¶¶ 14-20. Those allegations are buttressed by findings from the arbitrator who ordered that the City reinstate McNeff last year. *Id.* ¶¶ 25-27.

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

1    Indeed, it is hard to see how the Defendants can make a qualified immunity

2 argument at all after the arbitration. The City made the same *Pickering* argument in

3 the arbitration that it is making now. It conceded that the social media posts it tried to

4 fire McNeff over "were made as a private citizen regarding matter[s] of public

5 concern and were, accordingly, protected by the First [A]mendment." *Id.* ¶ 26. It

6 argued that it could do so because McNeff's comments were "'disruptive to the

7 Department, [ ] disruptive to working relationships, [ ] disrupts the routine operation

8 of the office, [and] can interfere with a speaker's performance as an officer.'" *Id.* The

9 arbitrator specifically rejected those arguments, concluding that "not only did Captain

10 Cox and Chief Swing testify that they had no evidence anyone from the public was

11 aware of these posts," which the City tried to fire him over, "but Captain Cox testified

12 that no one who was interviewed during the investigation said they had ever seen

13 McNeff act inappropriately toward Muslims or other minorities." *Id.* ¶ 27. Indeed, the

14 arbitrator noted that the PPD "had never received a single complaint of discrimination

15 by McNeff." *Id.*

16    In other words, the arbitrator believed—and the 2AC alleges—that Chief Swing

17 and Captain Cox acted in bad faith when they terminated McNeff's employment. An

18 allegation of bad faith defeats a qualified immunity defense at the pleading stage.

19 *Goleta Union Elementary Sch. Dist. v. Ordway*, 166 F. Supp. 2d 1287, 1299 (C.D.

20 Cal. 2001).

21    Defendants did not show otherwise in their motion. They misconstrued the

22 allegations made against Chief Swing while restricting their "clearly established law"

23 discussion to one paragraph of conclusory analysis that ignored the 2AC's allegations

24 about Chief Swing's and Captain Cox's knowledge and their bad faith effort to fire

25 McNeff for engaging in protected speech and political activity. Moreover, Defendants

26 argued that there was no reason Swing and Cox "should have known that firing an

27 employee *for a violation of City policies* was a clearly established constitutional

28

right." ECF 48 at 16 (emphasis added). That does not accept the allegations in the 2AC as true. It contradicts them. It also ignores the 2AC's allegation—and the arbitrator's express finding—that Swing and Cox "had no evidence anyone from the public was aware of these posts" that allegedly violated a city policy, one of which predated McNeff's employment with the City, and that the PPD "had never received a single complaint of discrimination by McNeff." 2AC, ¶ 27.

Discovery may provide Swing and Cox with better evidence to support their qualified immunity defense. At this stage, though, they have not met their burden of showing that the facts alleged in the 2AC, accepted as true and liberally construed in McNeff's favor, prove the defense as a matter of law.

## V.   **CONCLUSION**

For those reasons, the Court should deny the motion so this case can proceed into discovery and further litigation. Respectfully submitted,


Dated: February 1, 2024                    JW HOWARD/ATTORNEYS, LTD.


                                           /s/ Scott J. Street                    _
                                           Scott J. Street
                                           Attorneys for Peter McNeff

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JW HOWARD/ ATTORNEYS, LTD.
600 West Broadway, Suite 1400
San Diego, California 92101

**CERTIFICATE OF SERVICE**

At the time of service, I was over 18 years of age and not a party to this action. I am employed by JW Howard/Attorneys, LTD. in the County of San Diego, State of California. My business address is 600 West Broadway, Suite 1400, San Diego, California 92101.

On February 1, 2024, I caused the **OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINTCOMPLAINT** to be filed and served via the Court's Electronic Service upon the parties listed on the Court's service list for this case.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on February 1, 2024 at San Diego, California.

_____/s/ Dayna Dang_____
Dayna Dang, Paralegal
dayna@jwhowardattorneys.com

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS 2AC          CASE NO. 23-CV-00106-AMO