Scott J. Street (SBN 258962)
JW HOWARD/ATTORNEYS, LTD.
201 South Lake Avenue, Suite 303
Pasadena, CA 91101
Tel.: (213) 205-2800
Email: sstreet@jwhowardattorneys.com

John W. Howard (SBN 80200)
JW HOWARD/ATTORNEYS, LTD.
600 West Broadway, Suite 1400
San Diego, CA 92101
Tel.: (619) 234-2842
Email: johnh@jwhowardattorneys.com

Attorneys for Plaintiff
PETER MCNEFF

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER MCNEFF, <br><br>    Plaintiff, <br><br>vs. <br><br>THE CITY OF PLEASANTON, et al., <br><br>    Defendants. | Case No. 23-cv-00106-AMO <br><br> Assigned to Hon. Araceli Martinez-Olguin <br><br> **SUPPLEMENTAL BRIEF REGARDING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT** <br><br> Action Filed: January 10, 2023 |

///

///

///

The May 29 order stated that the Court may dismiss Peter McNeff's case in its entirety, with prejudice. ECF 56. That would be a mistake.

Defendants did not move to dismiss the first cause of action for failure to state a claim against Police Chief Larry Swing, so that act would be *sua sponte*. ECF 48. "*Sua sponte* dismissals are strong medicine, and should be dispensed sparingly." *Chute v. Walker*, 281 F.3d 314, 319 (1st Cir. 2002) (quotations omitted). "Only where it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile can a *sua sponte* Rule 12(b)(6) dismissal stand." *Garayalde-Rijos v. Municipality of Carolina*, 747 F.3d 15, 22-23 (1st Cir. 2014) (quotations omitted).

This is a high standard. "The party defending the dismissal must show that the allegations contained in the complaint, taken in the light most favorable to the plaintiff, are patently meritless and beyond all hope of redemption." *Chute*, 281 F.3d at 319 (quotations omitted).

That is not the case here. The Second Amended Complaint ("2AC") contains many detailed allegations against Chief Swing, including that: (1) he placed Mr. McNeff on administrative leave because he did not like McNeff's conservative political views, views that Chief Swing learned about after McNeff attended a political rally off-duty (as he was allowed to do) on January 6, 2021 (2AC, ¶ 17); (2) he wanted to fire McNeff because of McNeff's conservative political views, and he ordered an investigation into McNeff's past social media use to conceal that animus and create a pretext to fire him (2AC, ¶¶ 17-19); and (3) he instituted termination proceedings against McNeff in bad faith, not because McNeff violated city policy but because he did not like McNeff's conservative political views and wanted to purge the police department of them (2AC, ¶¶ 18-23).

Each of those actions is an adverse employment action that can support a First Amendment retaliation claim. *Coszalter v. City of Salem*, 320 F.3d 968, 975-77 (9th Cir. 2003); *see also Dahlia v. Rodriguez*, 735 F.3d 1060, 1079 (9th Cir. 2013) (en

banc) (placing an employee on leave can constitute adverse employment action).

Mr. McNeff can buttress those allegations with additional facts, including details about why Chief Swing knew that the "anonymous" complaint he received on January 10, 2021, came from an officer who shared his political animus. That includes the temporal proximity to another politically driven complaint plus the fact that McNeff attended the rally on his own time, in civilian clothes. Furthermore, the social media account McNeff used is a private account that uses a pseudonym. Thus, there was no way for anybody outside the department to recognize him.

In any event, this knowledge is a small part of the claim. It relates to only one of the three adverse actions Swing took against McNeff (the initial suspension). It is background. What matters is that Swing relieved McNeff of duty "to punish McNeff for his conservative political views and protected political activity." (2AC, ¶ 17.)

This reasoning extends to Defendants' qualified immunity argument. As an affirmative defense, a qualified immunity based "Rule 12(b)(6) dismissal is not appropriate unless [a court] can determine, based on the complaint itself, that qualified immunity applies." *Groten v. Cal.*, 251 F.3d 844, 851 (9th Cir. 2001). The Court must do "an individualized analysis to determine whether each moving defendant [is] entitled to qualified immunity based on his or her individual actions …." *Cunningham v. Gates*, 229 F.3d 1271, 1282, 1287 (9th Cir. 2000).

Defendants did not do that. Their motion contained virtually no discussion of Chief Swing. They just said there was no reason he "should have known that firing an employee for a violation of City policies was a clearly established constitutional right." ECF 48, at 16:12-14.

That is not what the 2AC alleged, though. Granting qualified immunity based on an argument that contradicts the face of the pleadings (and is done essentially *sua sponte* with respect to Swing) would constitute reversible error, especially given the Supreme Court's recent opinion in *National Rifle Association v. Vullo*, which, among

other things, criticized the Second Circuit for "taking the allegations in isolation and failing to draw reasonable inferences in the NRA's favor in violation of this Court's precedents." ECF 57, at pp. 22-23 (pp. 15-16 of slip opinion); *see also id.* at p. 26 (page 19 of slip opinion) (explaining clearly established principle that "the First Amendment prohibits government officials from wielding their power selectively to punish or suppress speech").

Mr. McNeff can also add allegations about the scope of the City Manager's delegation of policymaking authority to Chief Swing. For example, we would allege that Chief Swing believed the buck stopped with him, that Chief Swing was not constrained by any policies not of his own making, and that, despite the appeal process, the City Manager had a longstanding policy of doing whatever the Police Chief wanted regarding police officer discipline, such that Chief Swing's decisions were not actually subject to review by another city official. The Ninth Circuit has deemed similar evidence sufficient to "create a triable issue of material fact" on this issue. *Barone v. City of Springfield*, 902 F.3d 1091, 1109 (9th Cir. 2018). Given that no discovery has been done, we would omit *Monell's* ratification theory for now.

Finally, although discovery has not started, further investigation suggests that Captain Cox was following Chief Swing's orders and may not have shared Swing's retaliatory intent. Thus, Mr. McNeff is willing to dismiss Captain Cox from the case. That would resolve any issues related to him.

Respectfully submitted,

Dated: June 4, 2024                    JW HOWARD/ATTORNEYS, LTD.

/s/ Scott J. Street
Scott J. Street
Attorneys for Peter McNeff

**CERTIFICATE OF SERVICE**

At the time of service, I was over 18 years of age and not a party to this action. I am employed by JW Howard/Attorneys, LTD. in the County of San Diego, State of California. My business address is 600 West Broadway, Suite 1400, San Diego, California 92101.

On June 4, 2024, I caused the **SUPPLEMENTAL BRIEF REGARDING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT** to be filed and served via the Court's Electronic Service upon the parties listed on the Court's service list for this case.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on June 4, 2024 at San Diego, California.

                                      */s/ Dayna Dang*
                                    Dayna Dang, Paralegal
                                dayna@jwhowardattorneys.com