UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER McNEFF,<br><br>        Plaintiff,<br><br>    v.<br><br>PLEASANTON POLICE DEPARTMENT, et al.,<br><br>        Defendants. | Case No. 23-cv-00106-AMO<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT WITH PREJUDICE**<br><br>Re: Dkt. No. 48 |

This is a Title 42 U.S.C. § 1983 case in which a police officer alleges that he faced retaliatory employment actions in response to his off-duty attendance at a political event. Before the Court is Defendants' motion to dismiss the Second Amended Complaint. The matter is fully briefed and suitable for decision without oral argument. Accordingly, the hearing set for May 30, 2024, was vacated. *See* Civ. L.R. 7-1(b). Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby **GRANTS** Defendants' motion, for the following reasons.

**I.    BACKGROUND**

    **A.    Factual Background[1]**

Plaintiff Peter McNeff is a police officer for the Pleasanton Police Department ("PPD") and has worked for the City of Pleasanton since December 2015. Second Am. Compl. ("SAC," ECF 47) ¶¶ 1, 9. Defendant City of Pleasanton ("City") is a city within the State of California. SAC ¶ 2. Defendant David Swing ("Chief Swing"), an individual, is Chief of PPD. SAC ¶ 4.

---

[1] Unless otherwise noted, the Court accepts McNeff's allegations in the SAC as true and construes the pleadings in the light most favorable to McNeff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted).

Defendant Larry Cox ("Captain Cox"), an individual, is a Captain in PPD. SAC ¶ 5. Chief Swing and Captain Cox are referred to collectively as "Individual Defendants."[2]

On January 6, 2021, McNeff attended a "Stop the Steal" rally in Sacramento, California. SAC ¶ 10; Ex. A. He attended the rally during his personal time, in civilian clothing, and posted pictures of himself and his wife at the rally on his personal Facebook page. SAC ¶ 10. A PPD officer sent a memo to Chief Swing on January 7, 2021, accusing McNeff of being a member of the "Proud Boys." SAC ¶ 12. PPD took no action in response to this memo and notified McNeff that it would not take any action based on the memo. SAC ¶ 15.

Subsequently, another officer searched McNeff's social media account and sent a complaint to the City as an "anonymous concerned citizen" on January 10, 2021. SAC ¶ 16. In response to the anonymous complaint, Chief Swing immediately relieved McNeff of his duties and placed him on leave. SAC ¶ 17.

In March 2021, the PPD launched an internal affairs investigation into McNeff's social media conduct. SAC ¶ 18. "The investigation was retaliatory on its face," and both Chief Swing and Captain Cox "knew that the investigation was improper." SAC ¶¶ 19-20. Chief Swing and Captain Cox designed the investigation to review several years of McNeff's online activity to search for "off-color" social media posts to use against him. SAC ¶ 20. Swing and Cox delegated the investigation to an outside law firm, which in turn investigated five separate allegations against McNeff. SAC ¶ 20.

The outside law firm interviewed several PPD officers about each of the five allegations. SAC ¶¶ 21-22. The investigation sustained two findings against McNeff for violations of PPD and City policies based on the unearthed social media posts. SAC ¶¶ 22-23, Ex. A. The City terminated McNeff's employment following the investigation. SAC ¶ 23. The decision to terminate McNeff's employment "was made by Chief Swing acting pursuant to authority

---

[2] In the SAC, McNeff omits two Defendants named in the First Amended Complaint ("FAC"): Defendant Pleasanton Police Department and Defendant Brian Dolan ("Dolan"), the former City Manager for the City of Pleasanton.

1  delegated to him by the City Manager. The City Manager also knew about and ratified the
2  decision." SAC ¶ 23.

3  McNeff challenged his termination through arbitration and prevailed. SAC ¶ 25, Ex. A.
4  Significantly, the arbitrator concluded that the allegedly offending social media posts did not
5  violate City policy and that McNeff had engaged in First Amendment-protected activity, speaking
6  as a private citizen on matters such as Islamic extremism and public health restrictions during the
7  early stages of the Covid-19 Pandemic. SAC, Ex. A at 11-18. The arbitrator ordered that McNeff
8  be reinstated and paid his full back pay, plus 10 percent interest. *Id.* Although the arbitrator
9  ordered the City to reinstate McNeff last fall, McNeff still has not returned to active duty. SAC
10 ¶ 30.

### B. Procedural History

McNeff initiated this suit on January 10, 2023. ECF 1. He filed his First Amended Complaint on April 29, 2023 (ECF 20), and Defendants filed a Motion to Dismiss on May 15, 2023 (ECF 24). The Court granted the Motion to Dismiss on November 30, 2023, with leave to amend. ECF 44. McNeff filed his SAC on January 9, 2024. ECF 47. The SAC alleges the following claims: (1) 42 U.S.C. § 1983/First Amendment Retaliation against the Individual Defendants; and (2) 42 U.S.C. § 1983/First Amendment Retaliation against the City.[3]

The remaining Defendants filed the instant motion to dismiss on January 23, 2024. ECF 48. After McNeff filed his opposition and Defendants filed their reply, the Court ordered supplemental briefing on the issue of futility and vacated the hearing on the motion. *See* ECF 56. Specifically, the Court ordered "Plaintiff to submit a brief . . . describing what factual detail, if any, he could add in support of" (1) his allegations regarding what Chief Swing "knew, or reasonably should have known" about the sources of the complaints made against McNeff and (2) his allegations about the City Manager's simultaneous delegation and ratification of Chief Swing's decision to fire McNeff. *Id.* The Court permitted Defendants to file a response. *Id.*

---

[3] McNeff omits from the SAC the FAC's third cause of action, wrongful discharge for lawful off-duty conduct (Cal. Lab. Code § 96(k)).

3

## II. DISCUSSION

Defendants move to dismiss the SAC under Rule 12(b)(6).

### A. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679. Where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. *Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir. 2005).

### B. Analysis

Defendants challenge the sufficiency of the SAC on three bases: (1) that the SAC specifically fails to state a claim against Captain Cox; (2) that the individual defendants are entitled to qualified immunity; and (3) that the SAC fails to state a claim for *Monell* liability

4

against the City. ECF 48.[4]  Because the qualified immunity argument addresses McNeff's claims against both of the Individual Defendants, the Court takes up the second and third issues in turn.

### 1. Individual Defendants' Liability

Defendants argue that they enjoy qualified immunity from McNeff's claims because McNeff fails to allege a violation of his constitutional rights. The Court considers the sufficiency of McNeff's allegations regarding the Individual Defendants' liability before examining whether leave to amend should be granted.

#### a. Sufficiency of Pleading

Defendants aver that they are entitled to qualified immunity because McNeff fails to state a claim for violation of the First Amendment. They insist that McNeff only alleges in conclusory fashion that the Individual Defendants (a) investigated his conduct, (b) found that McNeff violated City policies unrelated to his political views or his attendance at the rally, and (c) that Defendants terminated McNeff for the violation of such policies, none of which constituted a violation of a constitutional right. McNeff counters that he plausibly alleges a violation of his First Amendment right to political speech through employment retaliation in the forms of his placement on leave, Defendants' investigation into his social media history following his rally attendance, and his termination.

Qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[T]o overcome qualified immunity, Plaintiffs must show that [defendants] (1) 'violated a federal statutory or constitutional right' and (2) 'the unlawfulness of their conduct was clearly established at the time.'" *Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022) (quoting *District of Columbia v. Wesby*, 583 U.S. 48 (2018)).

---

[4] McNeff argues in his supplemental brief that Defendants did not seek dismissal of Chief Swing. *See* ECF 58 at 2. Not so. Defendants argue that both Individual Defendants are entitled to qualified immunity (ECF 48 at 13-16) and move for dismissal of the claims in the SAC "in their entirety and without leave to amend" (*id.* at 2). The qualified immunity analysis below applies to both of the Individual Defendants.

"To state a First Amendment retaliation claim, a plaintiff must plausibly allege 'that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct.'" *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (quoting *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016)).  On this third element, courts require the plaintiff to "establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 259 (2006)).  A plaintiff must particularly show that the defendant's retaliatory animus was "a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* at 399 (quoting *Hartman*, 547 U.S. at 260).  "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured – the motive must *cause* the injury." *Id.* at 398 (emphasis in original).  In *Nieves*, for example, the plaintiff alleged that the defendants, two police officers, arrested him in retaliation for his First Amendment protected speech. *Id.* at 394.  The Supreme Court held that the plaintiff's failure to establish the absence of probable cause of his arrest for disorderly conduct and resisting arrest, and thus his failure to establish that his protected speech was the but-for cause of arrest, precluded a finding of retaliation for constitutionally-protected speech. *Id.* at 398-404.  The Ninth Circuit further clarified the nexus requirement from *Nieves* in another First Amendment retaliation matter, where it explained in significant part,

> Under this test, if the outcome (the adverse action) would not have occurred without the government official's retaliatory animus, then that animus was a but-for cause of the adverse action. *See* [*Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1739 (2020).] Conversely, if the government officials would have taken the same adverse action even in the absence of their animus or retaliatory motive arising from the plaintiff's speech, then the officials' animus was not a but-for cause of the adverse action, and there was no violation of the plaintiff's constitutional rights. *See id.* "It may be dishonorable to act with an unconstitutional motive and perhaps in some instances be unlawful, but action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway." [*Hartman v. Moore*, 547 U.S. 250, 260 (2006)].

6

*Boquist v. Courtney*, 32 F.4th 764, 778 (9th Cir. 2022). In concluding that the plaintiff had sufficiently pleaded but-for causation, the *Boquist* court noted that the challenged adverse action had been initiated purely in response to the plaintiff's protected speech and that the government defendants did not present an alternative basis for their conduct. *Id.* at 783-84.

Here, McNeff generally satisfies the first two prongs of the three-part test from *Capp*. *See* 940 F.3d at 1053. There is no dispute that McNeff's attendance at the rally constituted constitutionally protected activity, satisfying the first element of the test. There is also no dispute that the placement of McNeff on leave and his termination constituted adverse actions that would chill a person of ordinary firmness from continuing to attend political rallies, satisfying the second element of the test.

As for the third element, that McNeff's attendance at the rally led to or was a motivating factor in the adverse actions, McNeff fails to establish a causal connection. McNeff alleges that Chief Swing relieved him of his duties and placed him on leave not immediately after the discovery of his rally attendance, but rather, following receipt of an anonymous email complaint about McNeff's social media history on January 10, 2021 – an "anonymous" complaint that Chief Swing "knew, or reasonably should have known," was "unfounded" and made by another PPD officer. SAC ¶¶ 14-17. The Court notes, as an initial matter, that McNeff's allegations about what Chief Swing "knew, or reasonably should have known" are not entitled to the presumption of truth. *See Iqbal*, 556 U.S. at 681 (finding contention that defendants "knew of" discriminatory treatment to constitute nothing more than "formulaic recitation of the elements" of a constitutional violation, insufficient to state a claim). Even if the Court accepted McNeff's conclusory contentions regarding the Individual Defendants' intent, the facts presented in this case appear to fall squarely in line with *Nieves*'s and *Boquist*'s holdings that the government defendants' allegedly retaliatory actions need not be purehearted so long as the government actor has an alternate basis for taking the challenged action.

Moreover, McNeff's concession that Chief Swing had another rationale for placing him on leave and initiating an investigation into his social media history dooms his claim that Defendants retaliated against him for his rally attendance. McNeff plainly alleges that Defendants initiated the

adverse actions against him following a complaint about his social media conduct, and they took further action against him based on violations of City and PPD policies substantiated by an independent law firm hired to conduct the investigation. *See* SAC ¶¶ 20, 22, Ex. A at 4-7. The adverse actions against McNeff, by his own pleading, are thus attenuated from his attendance at the rally. In response to a complaint about his rally attendance on January 7, 2021, PPD informed McNeff that he would face no adverse action, and it was only on January 10, 2021, following a separate complaint regarding problematic social media posts, that McNeff faced the adverse actions. *See* SAC ¶¶ 12, 15-17. Despite McNeff's conclusory contentions that Chief Swing and Captain Cox held politically biased motives for placing him on leave, initiating the investigation into his social media history, and terminating him, McNeff fails to establish that the adverse actions would not have happened but for Defendants' retaliatory animus. *Cf. Boquist*, 32 F.4th at 778. Given the lack of a nexus between McNeff's protected speech and the adverse action, as well as Defendants' alternative rationale for taking the adverse action outside of retaliation for McNeff's First-Amendment-protected activity, McNeff fails to establish a constitutional violation and Defendants are entitled to qualified immunity. The Court therefore dismisses the first cause of action alleged against the Individual Defendants.

### b. Leave to Amend

In his supplemental brief, McNeff claims he can "buttress" allegations that the Individual Defendants knew or reasonably should have known the sources of complaints against McNeff "with additional facts." ECF 58 at 3. The potential new facts he identifies include that there was another politically driven complaint with temporal proximity, that McNeff attended the rally on his own time in civilian clothes, and that McNeff used a pseudonym for his social media account. *Id.* at 3. These allegations fail to move the needle – they were already included within the SAC. *See* SAC ¶¶ 10, 12, 16. In light of McNeff's inability to identify additional facts to bolster his claim of retaliation against the Individual Defendants, further amendment would prove futile. *See Ebner v. Fresh, Inc.*, 838 F.3d 958, 968 (9th Cir. 2016) (overruled on other grounds) (permitting dismissal without leave to amend where the trial court "determines that the pleading could not

1  possibly be cured by the allegation of other facts."). The Court accordingly dismisses the first
2  cause of action against both Individual Defendants without leave to amend.

### 2. *Monell* Liability

Defendants additionally move to dismiss the City for failure to establish municipal liability under Section 1983. The Court considers the sufficiency of McNeff's allegations regarding municipal liability before turning to whether leave to amend should be granted.

#### a. Sufficiency of Pleading

"The Supreme Court in *Monell* held that municipalities may only be held liable under section 1983 for constitutional violations resulting from official . . . policy or custom." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). "[P]olicies can include written policies, unwritten customs and practices, failure to train municipal employees on avoiding certain obvious constitutional violations, . . . and, in rare instances, single constitutional violations [that] are so inconsistent with constitutional rights that even such a single instance indicates at least deliberate indifference of the municipality[.]" *Benavidez*, 993 F.3d at 1153 (internal citations omitted). Municipalities also may be subject to damages when the plaintiff was injured pursuant to the decision of a "final policymaker." *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013). A plaintiff can establish municipality liability "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 964 (9th Cir. 2008) (en banc) (quotations omitted); *see also Lassiter v. City of Bremerton*, 556 F.3d 1049, 1055 (9th Cir. 2009).

"Whether a particular official has final policy-making authority is a question of state law," determined by the judge, not the jury. *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992); *Zografos v. City & Cnty. of San Francisco*, No. C-05-3881-PJH, 2006 WL 3699552, at *16 (N.D. Cal. Dec. 13, 2006). The court must first "identify the particular area or issue for which the official is alleged to be the final policymaker." *Cortez v. Cnty. of Los Angeles*, 294 F.3d 1186, 1189 (9th Cir. 2002) (citing *McMillian v. Monroe Cnty.*, 520 U.S. 781, 785 (1997)). Next, the

court must "analyze state law to discern the official's actual function with respect to that particular area or issue." *Id.* In so doing, courts look to state laws, county charters and codes, and city charters. *See Avenmarg v. Humboldt Cnty.*, No. 19-CV-05891-RMI, 2020 WL 4464876, at *7 (N.D. Cal. Aug. 4, 2020) (collecting cases). "The authority to exercise discretion while performing certain functions does not make the official a final policymaker unless the decisions are final, unreviewable, and not constrained by the official policies of superiors." *Zografos*, 2006 WL 3699552, at *16 (citing *Praprotnik*, 485 U.S. at 126-28); *see also Lopez v. City & Cnty. of San Francisco*, No. 12-CV-06523-MEJ, 2014 WL 2943417, at *14 (N.D. Cal. June 30, 2014) ("the fact that a city employee has some level of independent decision-making power does not render him a final policymaker for purposes of municipal liability"). Further, in the context of First Amendment retaliation claims, plaintiffs must also allege that the final policymaker "knew of [the] alleged retaliatory motive for" the actions they ratified. *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013)

Here, the SAC acknowledges that the Pleasanton City Manager, not either of the remaining individual defendants, has the authority to hire and fire employees and thus qualifies as an official with final policymaking authority. SAC ¶ 43. This point is reinforced by the City of Pleasanton's Municipal Code, under which Chief Swing reports to the City Manager, who in turn holds responsibility as the final policymaker. *See* RJN, Ex. A, Pleasanton Muni. Code Sections 2.08.070 & 2.08.090 (ECF 49-1 at 2, 4). McNeff asserts that the City Manager delegated that final policymaking authority to Chief Swing for purposes of firing McNeff. SAC ¶ 23.

McNeff asserts that a city manager's delegation of authority related to employee discipline is a factual matter that resists resolution at the pleading stage. *See* Opp. (ECF 50) at 16-17 (*citing Barone v. City of Springfield, Oregon*, 902 F.3d 1091, 1108 (9th Cir. 2018)). In *Barone*, the court focused on how the factual record supported a finding of delegation, including several statements demonstrating such delegation. 902 F.3d at 1108 (discussing police chief's concession that "the buck stops" with him "[w]ithin the department"; another city employee's admission that "whatever decision [the police chief] made, the city manager would support in this case"; and the city manager's testimony that he had "no role" in the decision to fire or discipline the plaintiff

employee). The *Barone* court distinguished the factual record presented in that case from another Ninth Circuit case, *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992), in which a city fire chief's discretion in hiring and firing did not give rise to municipal liability in light of the city manager's retained policymaking authority. *See Barone*, 902 F.3d at 1108 (noting that "[t]he plaintiff in *Gillette* failed to provide evidence that the City Manager delegated final policymaking authority to the fire chief.").

In contrast to *Barone*, and similar to *Gillette*, McNeff provides no factual support for the premise that the City Manager delegated authority to Chief Swing. McNeff instead alleges the conclusion that such authority was delegated. *See* SAC ¶¶ 42-43. McNeff alternatively asserts in conclusory fashion that the City Manager knew McNeff's termination was in retaliation for protected speech "or that [he] ratified the decision despite such knowledge." *Ellins*, 710 F.3d at 1066; SAC ¶ 24 ("[t]he City Manager also knew about and ratified the decision"). McNeff fails to present any facts regarding how the City Manager knew that the investigation into McNeff's social media conduct arose in retaliation for his exercise of free speech. Moreover, he does not allege that the City Manager's agreement with Chief Swing's termination recommendation constituted ratification of retaliation against McNeff. Even where the final policymaker knows about the factual basis for an allegedly unconstitutional employment decision, there must be sufficient allegations that the official is ratifying the decision on an unlawful basis to give rise to *Monell* liability. *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066-67 (9th Cir. 2013). That is not the case here. Therefore, McNeff has failed to allege that his alleged injury is attributable to the City's final policymaker and he fails to plausibly allege *Monell* liability. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citation omitted)). The Court dismisses the Section 1983 claim as to the City.

### b.     Leave to Amend

"Leave to amend is warranted if the deficiencies can be cured with additional allegations that are consistent with the challenged pleading and that do not contradict the allegations in the original complaint." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011)

(internal quotation marks and citation omitted). In its order for supplemental briefing, the Court instructed McNeff to identify additional facts he would supplement regarding the City Manager's simultaneous delegation of authority to Chief Swing and ratification of Chief Swing's decision to fire McNeff. ECF 56 at 1 (citing SAC ¶ 23). In response, McNeff states his intent to abandon the ratification theory in a subsequent pleading. ECF 58 at 4. He states further that he would assert that Chief Swing had final policymaking authority based on the practical indicia of decisionmaker authority considered in *Barone*, 902 F.3d at 1109. *See* ECF 58 at 4. However, attributing final decisionmaker authority solely to Chief Swing would be inconsistent with McNeff's earlier pleadings. *See, e.g.*, Compl. (ECF 1) ¶ 50, FAC (ECF 20) ¶¶ 79-80 (both pleadings referring also to the City Manager's final policymaker authority). Leave to amend is not warranted where McNeff offers a factually unsupported theory of liability that is inconsistent with his earlier pleadings. The Court accordingly dismisses the second cause of action against the City without leave to amend.

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss. Further amendment would prove futile. Therefore, the Court **DISMISSES the case with prejudice**.

**IT IS SO ORDERED.**

Dated: July 17, 2024

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**